IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

THOMAS REA                                                                                            PLAINTIFF

4:08-CV-04212-WRW

WAL-MART STORES, INC.                                                                    DEFENDANT

## ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 42). Plaintiff has responded,[1] and Defendant has replied.[2] Based on the findings of fact and conclusions of law below, Defendant's Motion for Summary Judgment is GRANTED.

## I.   BACKGROUND[3]

Plaintiff, who suffers from Attention Deficit Disorder ("ADD"), works as an assembler for Defendant. Among other things, he assembles bicycles that are displayed in Defendant's stores. Before being becoming an assembler, Plaintiff worked for Defendant as a Tire and Lube Express Associate.

When Plaintiff started as an assembler, there was a co-worker who listened to talk radio in the assembly room. Plaintiff informed his supervisor that the radio distracted him while he was working, so his supervisor suggested that he bring in headphones to listen to, which he did.

Before Plaintiff switched to his assembler position, he had problems with being distracted, tardy, and talkative; these problems followed him to his new position. Plaintiff's 2006-2007 performance evaluation, dated July 12, 2007, indicated that Plaintiff continued to

---

[1]Doc. No. 45.

[2]Doc. No. 51.

[3]Unless otherwise noted, the facts in this section are from the parties' Statements of Material Facts Not in Dispute. *See* Doc. Nos. 44, 48.

have troubles focusing on his job duties. It noted that he "must complete tasks in the time frame allowed," needed to "stay on task," and needed to "work to improve overall productivity."[4] The annual performance evaluations for 2007-2008 and 2008-2009 noted the same problems

A July 21, 2007, Coaching for Improvement Form noted that Plaintiff "has let his productivity fall below accepted standards."[5] That same day, the new store manager, Shane Werling, prohibited radios in work areas; the prohibition included headphones. A few days later, Plaintiff completed a Reasonable Accommodation Form. On the form he noted that he had "ADD and other disabilities" that limited his "auditory discrimination."[6] He requested permission to listen to his headphones while working. Along with his form, Plaintiff provided Defendant with a letter from his doctor that notes that Plaintiff suffers from ADD, and suggests that it "would be desirous" for Plaintiff to listen to music while working because music may "help him block out extraneous auditory stimulation . . . allowing him to be more functional and productive."[7]

On August 17, 2007, Plaintiff was written-up regarding his lack of productivity. The write-up also noted that Plaintiff "spends too much time visiting with other associates, customers, and supervisors."[8]

---

[4] Doc. No. 42-1.

[5] *Id.*

[6] Doc. No. 49-4.

[7] Doc. No. 1.

[8] Doc. No. 42-1.

Plaintiff filed a complaint with the EEOC on September 18, 2007, alleging that he had been denied an accommodation in violation of the ADA. Plaintiff received a Notice of Rights to Sue Letter on September 16, 2008, and filed this complaint on December 12, 2008.[9]

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[10] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[11]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[12] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[13] This court must view the facts in the light most favorable to the party opposing the motion.[14] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which

---

[9]Doc. No. 1.

[10]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[12]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[13]*Id.* at 728.

[14]*Id.* at 727-28.

3

bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[15]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[16]

### III. DISCUSSION

#### A. Disability Under the ADA

Plaintiff asserts that his ADD qualifies as a disability under the ADA. Although ADD is a mental impairment, to qualify for ADA protection, Plaintiff's ADD must "substantially limit[] on or more major life activities."[17] According to the statute, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[18] To establish that his ADD is "substantially limiting," Plaintiff must show that he is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.[19]

---

[15]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[16]*Anderson*, 477 U.S. at 248.

[17]42 U.S.C. § 12102(1)(A).

[18]42 U.S.C. § 12102(2)(A).

[19]29 C.F.R. § 1630.2(j)(1).

As to "major life activities" that are impaired, Plaintiff asserts that he has problems concentrating, speaking, hearing, learning, and sleeping. Plaintiff contends that he has issues staying focused because he is easily distracted by things going on around him. He asserts that his speaking "can get quite muddled if [he's] in an area that's . . . filled with different sounds or whatever."[20] With regard to hearing, Plaintiff avers that he has acute hearing that "affords [him] the opportunity to hear all the thing that are around" him, which can be "rather distracting."[21] For Plaintiff, "learning generally requires a great deal of effort to focus on the material, to concentrate, [and] to retain" the information.[22] Finally, Plaintiff asserts that he can have trouble falling asleep and waking up.[23]

None of the described limitations caused by Plaintiff's ADD rise to the level of "substantially limiting" his major life activities. Plaintiff's distractions, muddled speech, and acute hearing do not *substantially* limit his major life activities. Plaintiff has provided no evidence that his ADD *significantly* restricts his ability to perform a major life activity when compared to the general population. Accordingly, Plaintiff's ADD is not a qualifying disability under the ADA.

### B. Reasonable Accommodation

Even assuming that Plaintiff has a qualified disability under the ADA, he has failed to show that having headphones is a reasonable accommodation necessary for Plaintiff to "perform

---

[20] Doc. No. 49-2.

[21] *Id.*

[22] *Id.*

[23] *Id.*

the essential functions" of his job.[24]  Discrimination under the ADA includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee."[25]

Plaintiff asserts that his ADD causes him to be distracted, especially by excessive noises. According to Plaintiff, one coworker he was stationed close to "had a radio . . . so it was kind of nice . . . [since] he listened to classical music."[26]  However, another coworker listened to talk radio that "was political in nature . . . and not really to [Plaintiff's] interest," so he found it "rather distracting."[27]  When Plaintiff informed his manager that the radio was distracting, the manager at the time allowed Plaintiff to use headphones.  A few years later, a new manager arrived and had all radios and headphones removed from the work areas.  Plaintiff contends that he should be permitted to continue to use his headphones; however, there's no longer a radio on to distract him, which means the original reason he requested headphones has been remedied.

In this instance, Defendant fixed Plaintiff's complaint of extraneous radio noise by removing all radios (and headphones) from work areas.[28]  Since the original reason for Plaintiff

---

[24]29 C.F.R. § 1630.2(o)(1)(2).  Reasonable accommodation means: "Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . . ."

[25]42 U.S.C.A. § 12112(b)(5)(A).

[26]Doc. No. 42-1.

[27]Doc. No. 49-2.

[28]See *Vetter v. Farmland Industries, Inc.*, 884 F. Supp. 1287, 1310 (N.D. Iowa 1995) ("Compliance with Title VII does not require an employer to give an employee a choice among several accommodations, nor is the employer required to demonstrate that alternative accommodations proposed by the employee constitute undue hardship, as long as the employer shows that it afforded the employee reasonable accommodation regardless of who suggested it.").

6

wanting headphones -- a coworker's distracting radio -- is no longer an issue, there appears to be no need for the headphones.  Plaintiff's desire for headphones becomes a matter of preference, not necessity.  Additionally, the letter from Plaintiff's physician does not support his claim that headphones are *necessary* to allow him to perform the essential functions of his job.  Rather his physician concluded that headphones would be "desirous in allowing him to be more functional and productive."[29]  Notably, the annual review from 2006-2007 indicated that Plaintiff's lack of productivity issues persisted even while he *had* headphones.  Finally, the evidence demonstrates that Plaintiff is capable of performing the essential functions of his position both with and without the headphones.  The undisputed evidence establishes that the requested accommodation is not necessary but "desirous," and apparently does not assist Plaintiff in improving his performance issues.

### C.     Interactive Process

Under the ADA, if an employee requests an accommodation, the "employer must engage in an interactive process to identify potential accommodations that could overcome the employee's limitations."[30]  Plaintiff asserts that Defendant never responded to his accommodation request, and, therefore, failed to participate in the interactive process.

Defendant contends that Plaintiff's "interactive process" claim is without merit, because Plaintiff is not disabled under the ADA.[31]  Defendant asserts that it engaged in the appropriate dialogue with Plaintiff on the issue when it directed Plaintiff to fill out an accommodation request and then (according to Defendant) denied the request.  Based on the undisputed facts,

---

[29] Doc. No. 49-4.

[30] *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 902 (8th Cir. 2006).

[31] Doc. No. 51.

Defendant disallowed Plaintiff's use of headphones (even after originally suggesting he use them); Plaintiff submitted an accommodation request; and Plaintiff still is not permitted to use headphones. However, missing from the record is any indication that Defendant, in good faith before Plaintiff filed his EEOC claim, considered Plaintiff's request or made an official determination regarding his request.[32] Defendant's internal procedures directs supervisors, when denying an accommodation, to confer the personnel manager and "complete Section 2 of the Reasonable Accommodation Form [and] give a copy to the Associate."[33] Yet, Section 2 of the Accommodation Form in this record is blank, and according to Plaintiff (and Defendant does not appear to dispute the issue in its briefs), Defendant never followed up with him regarding his request.

While, as I pointed out earlier, Plaintiff's ADD doesn't appear to be a disability under the ADA, and using headphones is not necessary to allow Plaintiff to perform the essential functions of his job, I'm troubled by the fact that Defendant never officially made this determination -- or if it did, it did not inform Plaintiff as required by its internal protocol. Instead, a supervisor decided to disallow the use radios (and headphoness) in work areas, and when an employee informed the supervisor that he needed an accommodation, nothing further appears to have been done. In fact, according to the record before me, Defendant has yet to determine and inform Plaintiff that his requests for a headphones is not a reasonable accommodation.

This presents an interesting situation -- that is, there is an employee who asserts that he has a disability under the ADA and requests an accommodation, but the employer never actively

---

[32]The only reference I could find in the record is Defendant's November 9, 2007, letter to the EEOC that its "ADA Department denied the request as 'not reasonable/not reasonably connected to the condition.'" Doc. No. 49-6. However, I could find nothing in the record to indicate that this information was ever relayed to Plaintiff.

[33]Doc. No. 49-5.

engaged the employee regarding his request nor its decision regarding the accommodation. Unfortunately, the employer's apathy appears to be irrelevant since "there is no per se liability under the ADA if an employer fails to engage in an interactive process . . . ."[34]  Additionally, an employer appears to be required only to engage in the "informal, interactive process with the qualified individual with a disability in need of the accommodation."[35]  Since Plaintiff is not a "qualified individual" under the ADA, his "interactive process" claims must fail.  Sill, I'm troubled by the fact that, before Plaintiff filed his charge with the EEOC, Defendant neither attempted to determine whether Plaintiff was a qualified individual under the ADA nor informed Plaintiff of its decision.

## CONCLUSION

Based on the findings of facts and conclusions of law above, Defendant's Motion for Summary Judgment (Doc. No. 42) is GRANTED.

IT IS SO ORDERED this 2nd day of September, 2010.

/s/ Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[34] *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000).

[35] 29 C.F.R. § 1630.2(o)(3).